**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**LINDSEY LEHR, on behalf of herself**
**and those similarly situated,**

      **Plaintiff,**

   **v.**                          **Case No.:  9:23-cv-80405-AMC**

**CRYO-CELL INTERNATIONAL, INC.,**

      **Defendant.**

_____/

**<u>DEFENDANT'S MOTION TO COMPEL ARBITRATION</u>**

In 2018, and again in 2021, Plaintiff Lindsey Lehr and her husband stored their children's umbilical cord blood and cord tissue with Defendant Cryo-Cell International, Inc. ("Cryo-Cell") pursuant to agreements that include a mandatory arbitration clause.  Then, in 2022, Ms. Lehr filed a Demand for Arbitration asserting individual and class claims against Cryo-Cell, but when the American Arbitration Association requested the parties confirm their agreement to arbitrate, Ms. Lehr refused—despite her agreements with Cryo-Cell to arbitrate and her then-pending demand for arbitration against it—and instead filed her Complaint asserting the same claims against Cryo-Cell in this case.

Because Ms. Lehr's agreements with Cryo-Cell require arbitration of all disputes between them, Cryo-Cell moves pursuant to 9 U.S.C. § 4 for an order compelling Ms. Lehr to submit her claims to arbitration for a determination of the arbitrability of those claims or, if the Court decides arbitrability, for an order compelling arbitration of Ms. Lehr's individual claims as her sole and exclusive remedy under her agreements and dismissing her class claims as the parties did not consent to, and her agreements do not authorize, class arbitration.

## I.  BACKGROUND

Cryo-Cell was founded in 1989 and is the world's first private umbilical cord blood bank to separate and store stem cells.  The company has served more than 500,000 clients and their families in the United States and across the globe.  Umbilical cord blood is extracted at birth by the mother's physician and placed in a collection kit provided by Cryo-Cell.  The specimen is delivered to Cryo-Cell for testing and processing, and for preservation and storage of the cord blood.  Cryo-Cell operates its own state-of-the-art facilities to ensure it is offering the highest quality cryopreservation services.[1]

Ms. Lehr and her husband (both of whom are Florida lawyers) are repeat Cryo-Cell clients who twice chose—over a period of three years—to store their children's cord blood and cord tissue with Cryo-Cell.  In March 2018, Ms. Lehr and her husband signed a Cryo-Cell Client Agreement for the collection and preservation of umbilical cord blood and cord tissue in anticipation of her childbirth in May 2018.  *See* **Exhibit 1**, 2018 Agreement, p. 6.  As returning Cryo-Cell clients in January 2021, Ms. Lehr and her husband signed a second Cryo-Cell Client Agreement for the same services in anticipation of their second child due later that year.  *See* **Exhibit 2**, 2021 Agreement, p. 6.

Ms. Lehr's agreements with Cryo-Cell each include a binding and mandatory arbitration provision requiring that:

> All questions, disputes or differences which may arise between the Parties to this Contract shall, if such questions, disputes or differences cannot be amicably resolved by the Parties, be referred to arbitration to be held in Pinellas County, Florida in accordance with the Commercial Arbitration Rules of the American Arbitration Association, which rules are deemed to be incorporated by reference into this Section.  The arbitrators' decision shall be final and binding upon the Parties and shall provide the sole and

---

[1] *Corporate Overview and Mission,* CRYO-CELL INTERNATIONAL, *available at* https://www.cryo-cell.com/about/corporate-overview-mission; *What is Cord Blood and Cord Blood Banking*, CRYO-CELL INTERNATIONAL, *available at* https://www.cryo-cell.com/cord-blood-banking; *see* Declaration of Jill Taymans (Doc. 1-1), ¶¶ 12-16.

exclusive remedies of the Parties.  Judgment upon any award rendered by the arbitrator may be entered in any court having jurisdiction in Pinellas.  Application may be made to such court for judicial acceptance of the award or orders of enforcement.

*See* Exs. 1 & 2, p. 4.

In November 2022, pursuant to the arbitration clause in her agreements, Ms. Lehr filed a Demand for Arbitration against Cryo-Cell with the American Arbitration Association ("AAA"), along with her 2018 Client Agreement and Statement of Claims.  *See* **Exhibit 3**, Ms. Lehr's November 11, 2022 Demand for Arbitration and attachments.  Ms. Lehr made her Demand for Arbitration on behalf of herself and a putative class of individuals throughout the United States who entered agreements with Cryo-Cell for umbilical cord blood storage services since May 2018, alleging that Cryo-Cell's advertising does not accurately represent the value and efficacy of its services and asserting claims for alleged damages and other relief under Florida law.  *Id.*

On November 23, 2022, before appointing an arbitrator or otherwise administering the case—and notwithstanding the arbitration clause in Ms. Lehr's March 2018 Client Agreement attached to her Demand for Arbitration—the AAA's case filing office issued a letter asking the parties to sign it, signifying their agreement to arbitrate.  *See* **Exhibit 4**, Nov. 23, 2022 AAA letter.  According to the AAA's letter, "[p]ursuant to the Healthcare Due Process Protocol, which can be found on the AAA's website, specifically Principle 3, the AAA may only proceed forward on arbitration matters arising out of healthcare treatment agreements if the parties agree to binding forms of dispute resolution after a dispute arises."  *Id.*  Principle 3 of the AAA's Healthcare Due Process Protocol states:

> The agreement to use ADR [alternative dispute resolution] should be knowing and voluntary.  Consent to use an ADR process should not be a requirement for receiving emergency care or treatment.  In disputes involving patients, binding forms of dispute resolution should be used only where the parties agree to do so after a dispute arises.

*See* **Exhibit 5**, AAA Healthcare Due Process Protocol ("Protocol"), Principle 3, p. 16.

On December 23, 2022, Cryo-Cell timely returned a signed copy of the AAA's November 23 letter.  *See* **Exhibit 6**, Dec. 23, 2022 Cryo-Cell Letter to AAA, p. 1.[2]  Cryo-Cell also requested reconsideration of the AAA's administrative decision to apply the Protocol because, among other reasons, Cryo-Cell is not a healthcare provider and Ms. Lehr and the other Cryo-Cell clients who she purports to represent are not patients of Cryo-Cell (and Ms. Lehr does not allege they are patients of Cryo-Cell).  *See* Ex. 6.  Therefore, the Protocol does not apply to Ms. Lehr's claims.[3]  Cryo-Cell also pointed out that even if the Protocol's Principle 3 post-dispute agreement provision applied, it is satisfied because Ms. Lehr manifested her agreement to arbitrate this dispute, *after it arose,* by filing her Demand for Arbitration.  *See* Ex. 6.

Ms. Lehr did not sign and return a copy of the AAA's November 23 letter.  On January 4, 2023, Ms. Lehr advised the AAA that, after receiving the AAA's November 23 letter, she does not agree to arbitrate her claims against Cryo-Cell.  *See* **Exhibit 7**, Ms. Lehr's Jan. 4, 2023 letter to AAA.  In her January 4 letter, Ms. Lehr did not respond to the substance of Cryo-Cell's December 23 request for reconsideration and, specifically, did not claim that Cryo-Cell is a healthcare provider or that she is its patient.  *See* Ex. 7.  Instead, Ms. Lehr stated her position that "once the AAA has made a decision to apply the Protocol, Cryo-Cell may seek an order from a court of competent jurisdiction regarding the parties' arbitration obligations."  *Id.*[4]  Ms. Lehr advised the AAA that she would "proceed to file her claim in court, at which time Cryo-Cell can elect whether to seek an order on the arbitration provision at issue here."  *Id.*

---

[2] The AAA extended the deadline for the parties to return signed copies of its November 23 letter to December 23, 2022.  *See* Ex. 6, p. 1 n.1.

[3] *See Owens v. Nat'l Health Corp.*, 263 S.W.3d 876, 888 (Tenn. 2007) ("[B]y its express terms, the [Healthcare] Due Process Protocol applies only in the context of disputes arising between patients and their private managed-care plans.").

[4] Ms. Lehr cited the AAA Healthcare Policy Statement, which provides that notwithstanding the Protocol, "the AAA will administer disputes between patients and healthcare providers to the extent a court order directs such a dispute to arbitration."  *See* Exs. 7 & 13.

On January 6, 2023, Ms. Lehr filed her Complaint in this case, with the same allegations and individual and class claims as in her Demand for Arbitration. *See* Doc. 1-2, p. 8 and Ex. 3. On January 9, 2023, Ms. Lehr advised the AAA that she sued Cryo-Cell in state court and enclosed a copy of her Complaint, stating "[her] view of the applicable rules is that the state court is the proper forum to resolve this question." *See* **Exhibit 8**, Ms. Lehr's Jan. 9, 2023 email to AAA.

On January 17, 2023, the AAA notified the parties it would adhere to its initial determination and require both parties to sign and return its November 23 letter by January 31, 2023, or the AAA would close its file. *See* **Exhibit 9**, Jan. 17, 2023 AAA email. The AAA administrator stated "[t]he parties may wish to raise this issue to the arbitrator upon appointment." *Id.* Ms. Lehr did not return a signed copy of the AAA's November 23 letter and, on February 3, 2023, the AAA administratively closed its file. *See* **Exhibit 10**, Feb. 3, 2023 AAA letter. Cryo-Cell was then served with the Summons and Complaint (Doc. 1-2), and now moves to compel arbitration of Ms. Lehr's claims pursuant to her agreements with Cryo-Cell.

## II. <u>DISCUSSION</u>

The Federal Arbitration Act ("FAA") reflects "a liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 346 (2011) (citation omitted), and "applies to all arbitration agreements involving interstate commerce." *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1258 n.2 (11th Cir. 2003). It "creates a presumption in favor of arbitrability," *Palidino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054, 1057 (11th Cir. 1998), and requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221 (1985).

The FAA "leaves no place for the exercise of discretion by a district court" and "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 218. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983). The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *See Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 92 (2000).

"[A] court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S. Ct. 524, 530 (2019). "[B]y incorporating AAA rules into an agreement parties clearly and unmistakably evince an intent to delegate questions of arbitrability [to an arbitrator]." *JPay, Inc. v. Kobel*, 904 F.3d 923, 937 (11th Cir. 2018). Gateway questions of arbitrability must be decided by an arbitrator—not an AAA administrator. *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 580 (6th Cir. 2021) ("Under the agreement and the incorporated AAA rules, it was improper for an administrator to effectively answer that gateway question [of arbitrability] or to overlook it altogether by binding the parties to AAA's views of sound policy [in the Healthcare Due Process Protocol].").

A.  **The FAA applies because Ms. Lehr's claims involve interstate commerce**.

Ms. Lehr portrays her claims as addressing Cryo-Cell's "statements to parents throughout the United States," while alleging that "Cryo-Cell collects and stores umbilical cord blood throughout the United States," and asserts her claims on behalf of a putative class of "all consumers in the United States who contracted with [Cryo-Cell] for private cord blood banking." Complaint, ¶¶ 1, 2 & 34. As such, Ms. Lehr's claims allegedly concern Cryo-Cell's interstate services and customer base that reach across state lines and extend throughout the United States.

*See* Complaint, ¶ 35 (alleging a putative class consisting of "all United States residents" who are Cryo-Cell clients and meet other criteria).

The FAA broadly applies to any "contract evidencing a transaction ***involving commerce***." 9 U.S.C. § 2 (emphasis added). The FAA's use of the term "involving commerce . . . . signals an intent to exercise Congress' commerce power to the full." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001); *see also, e.g.*, *Wachovia Sec., LLC v. Vogel*, 918 So. 2d 1004, 1007 (Fla. 2d DCA 2006) ("Where, as here, interstate commerce is involved, federal law governs the analysis of the arbitration proceeding.") (citing *Merrill, Lynch, Pierce, Fenner & Smith Inc. v. Melamed*, 405 So. 2d 790 (Fla. 4th DCA 1981)).

That Ms. Lehr's claims involve interstate commerce is apparent from the first paragraph of, and the allegations throughout, her Complaint. *See, e.g.,* Complaint, ¶¶ 1-2, 34-35. Cryo-Cell has filed a Declaration of its Chief Financial Officer, Jill Taymans, establishing that more than two-thirds of Cryo-Cell's clients comprising Ms. Lehr's putative class have an address in the United States that is outside of Florida. Doc. 1-1, ¶ 15. As such, the allegations of Ms. Lehr's Complaint and the contours of her proposed class demonstrate a sufficient nexus to interstate commerce to compel arbitration under the FAA. *See Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1293 (S.D. Fla. 2017) ("To compel arbitration under the FAA, the movant must establish that . . . . a nexus to interstate commerce exists.").

The interstate commerce requirement is also satisfied in cases like this one involving contracts between parties from different states. *See, e.g.*, *Catastrophe Servs., Inc. v. Fouche*, 145 So. 3d 151, 154 (Fla. 5th DCA 2014) ("A contract between a Florida resident and a foreign corporation is an agreement evidencing a transaction involving interstate commerce."); *Gilman + Ciocia, Inc. v. Wetherald*, 885 So.2d 900, 904-05 (Fla. 4th DCA 2004) (applying the FAA to a

contract between a New York company and a Florida resident).  *See* Taymans Decl. (Doc 1-1) ¶¶ 6 & 14 (establishing that more than 100 Cryo-Cell clients comprising Ms. Lehr's putative class have an address in the United States that is outside of Delaware and Florida, the states of Cryo-Cell's incorporation and principal place of business).

Ms. Taymans's Declaration also establishes that Cryo-Cell provides cord blood collection kits to its clients that are manufactured and assembled outside of Florida by third parties, and then sent to Cryo-Cell in Florida for labeling and shipping to Cryo-Cell clients throughout the United States.  Doc. 1-1, ¶ 16.  After cord blood is collected at birth by the Cryo-Cell client's physician, it is sent in the kit to Cryo-Cell's laboratory in Florida by medical courier.  *Id.*  Part of the cord blood is then sent to North Carolina for testing by a third party and the rest is processed and cryogenically stored in Florida.  *Id.*  Cryo-Cell delivered cord blood collection kits to members of Ms. Lehr's proposed class throughout the United States, and to Ms. Lehr, that were manufactured, assembled, shipped, used, and processed as described above.  *Id.*

Cryo-Cell's cord blood collection kit production and delivery processes, as well as its use of the kits to provide its services, also illustrate the interstate commerce aspects of each Cryo-Cell cord blood storage transaction, whether the Cryo-Cell client is outside of, or in Florida, such as Ms. Lehr, further demonstrating the connection of her individual and class claims to interstate commerce.  *See, e.g.*, *Rewards Hotel Mgmt. Co., LLC v. Elite Gen. Contractors, Inc.*, 860 So. 2d 1011, 1013–14 (Fla. 3d DCA 2003) (applying the FAA where "a portion of the transaction included . . . shipment of goods in foreign and interstate commerce").[5]

The FAA applies in this case because Ms. Lehr's claims involve and have a substantial nexus to interstate commerce.  As discussed below, the FAA requires that an arbitrator determine

---

[5] The FAA applies when interstate commerce is involved even if the contract contains a choice of law provision specifying Florida law.  *Rewards Hotel Mgmt. Co., LLC,* 860 So. 2d at 1013-14.

gateway questions including the arbitrability of Ms. Lehr's claims.

**B.**   **The arbitrator should determine the arbitrability of Ms. Lehr's claims.**

Ms. Lehr's agreements require her to arbitrate "[a]ll questions, disputes or differences" with Cryo-Cell "in accordance with the Commercial Arbitration Rules of the American Arbitration Association" that are expressly "incorporated by reference into this Section [of the agreements]." Exs. 1 & 2, p. 4. The arbitrator's decisions "shall be final and binding" and constitute "the sole and exclusive remedies of the Parties." *Id.* The parties' incorporation of the AAA rules and the broad delegation of authority to the arbitrator are significant and mean that an arbitrator—not a court or an AAA administrator—must decide threshold questions of arbitrability. *Ciccio*, 2 F.4th at 580 ("[N]either the administrator nor the district court should have decided whether Johnson's claims were arbitrable.").

"[I]f the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein,* 139 S. Ct. at 530. For individual and class claims, "the reference or incorporation of AAA Rules . . . demonstrates a clear and unmistakable intent that the arbitrator should decide all questions of arbitrability." *In re Checking Acct. Overdraft Litig.*, 856 F. App'x 238, 243 (11th Cir. 2021). The AAA rules incorporated by reference in Ms. Lehr's agreements provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim." *See* **Exhibit 11**, AAA Commercial Rules, R-7. Jurisdiction, p. 14.[6]

"[I]f an agreement 'clearly and unmistakably' designates an arbitrator to determine threshold questions of arbitrability, the court must compel arbitration, and reserve for the

---

[6] The AAA's November 23 letter refers to the AAA Consumer Rules, *see* Ex. 4, which also authorize the arbitrator to rule on his or her own jurisdiction, the existence, scope, or validity of the parties' agreement, and the arbitrability of any claim. *See* **Exhibit 12**, AAA Consumer Rules, R-14. Jurisdiction, p. 17.

arbitrator issues surrounding the arbitration agreement as a whole, the validity of the contract, or the scope of arbitrable claims." *Rojas v. Allied Pros. Ins. Co*., 2015 WL 11199693, at *2 (S.D. Fla. July 28, 2015) (citation omitted); *De Pombo v. IRINOX N. Am., Inc*., 2020 WL 2526499, at *7 (S.D. Fla. May 18, 2020) ("When parties clearly and unmistakably defer the issue of arbitrability to the arbitrator, however, the court should compel arbitration without assessing the arbitration agreement's validity or scope.").

By agreeing to resolve disputes "in accordance with the Commercial Arbitration Rules of the American Arbitration Association," the parties manifested a clear and unmistakable intent for the arbitrator to decide gateway questions including the arbitrability of Ms. Lehr's individual and class claims. *See, e.g.*, *Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230, 1233–34 (11th Cir. 2018) ("The parties' agreement plainly chose AAA rules. Those rules include AAA's Supplementary Rules for Class Arbitrations . . . . this is clear and unmistakable evidence that the parties chose to have an arbitrator decide whether their agreement provided for class arbitration."); *JPay,* 904 F.3d at 927 ("[T]he availability of class arbitration is a question of arbitrability . . . . We find a clear and unmistakable intent to delegate questions of arbitrability to the arbitrator . . . . [the agreement] references AAA rules three times.").

The delegation of authority to the arbitrator whose decisions provide the "sole and exclusive remedies" for the parties further evidences the parties' intent to delegate questions of arbitrability to the arbitrator. *See Arshad v. Transportation Sys., Inc.*, 183 F. Supp. 3d 442, 447 (S.D.N.Y. 2016) ("We find clear and unmistakable evidence that the [Agreement's] arbitration provision delegates the question of arbitrability to the arbitrator . . . . in the expansive breadth of the arbitration provision, which imposes mandatory binding arbitration as 'the sole and exclusive method of resolving any claim or controversy.'").

Courts have repeatedly found that language similar to the terms of the arbitration clause in Ms. Lehr's agreements constitutes delegation of gateway questions to an arbitrator.  *See Spirit Airlines, Inc. v. Maizes*, 899 F.3d at 1232 ("Any dispute arising between Members and Spirit will be resolved by submission to arbitration . . . in accordance with the rules of the [AAA]."); *Yan v. Jeffry Knight, Inc.*, 2021 WL 3709175, at *2 (M.D. Fla. Jan. 11, 2021) ("Any controversy or claim . . . shall be settled by arbitration administered by the [AAA] in accordance with its Commercial Rules."); *Arshad*, 183 F. Supp. 3d at 447; *Senior Servs. of Palm Beach LLC v. ABCSP Inc.*, 2012 WL 2054971, at *3 (S.D. Fla. June 7, 2012) ("The parties' arbitration clause states that arbitration "shall be conducted . . . in accordance with the rules of the [AAA].").

Ms. Lehr's Complaint does not challenge the arbitration provision and, as a result, the Court must treat the arbitration provision and its delegation of gateway questions to an arbitrator as valid and enforceable.  *See Richemond v. Uber Techs., Inc.*, 263 F. Supp. 3d 1312, 1316 (S.D. Fla. 2017) ("Unless a party directly challenges a delegation provision, the court 'must treat it as valid under § 2, and must enforce it under §§ 3 and 4 [of the FAA], leaving any challenge to the validity of the Agreement as a whole for the arbitrator.") (quoting *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010)); *Real Digital Media, LLC v. Bell Microproducts, Inc.*, 2009 WL 10670943, at *3 (M.D. Fla. May 1, 2009) ("[T]his Court is satisfied that Plaintiff does not present a claim for fraud in the inducement of the arbitration clause itself, but rather, a claim of fraud in the inducement of the Agreement generally . . . . [T]his Court finds that it may compel arbitration.").

Ms. Lehr's agreements with Cryo-Cell establish a clear and unmistakable intent to refer gateway questions including arbitrability to the arbitrator.   *See* Exs. 1 & 2, p. 4.  As a result, "the court should compel arbitration without assessing the arbitration agreement's validity or

scope." *De Pombo*, 2020 WL 2526499, at *7 (citation omitted).  Therefore, Ms. Lehr should be compelled to submit her claims to arbitration for a determination of the arbitrability of those claims.

**C.**  **The Court should compel arbitration notwithstanding the AAA's erroneous administrative decision to apply its Healthcare Due Process Protocol.**

The cited authorities require an arbitrator to determine the arbitrability of Ms. Lehr's claims notwithstanding the AAA's flawed administrative decision to apply the Protocol and, after Ms. Lehr refused to confirm her agreement to arbitrate, close its file.  Threshold questions of arbitrability must be decided by an arbitrator, not an AAA administrator.  *See Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 582 (6th Cir. 2021) ("An AAA administrator decided that [the Healthcare Due Process Protocol] applied, and so found that [the] dispute with Johnson was not arbitrable . . . .  But neither the administrator nor the district court should have decided whether Johnson's claims were arbitrable.").

The AAA rules imbue the arbitrator, alone, with the authority to address threshold questions including arbitrability.  *See* Ex. 11, R-7(a), Ex. 12, R-14(a).  Under the AAA rules, the roles of an arbitrator and an administrator are distinct.  The AAA Consumer Rules, for example, provide that an "Administrator does not decide the merits of a case or make any rulings . . . . [b]ecause the Administrator's role is only administrative."  *See* Ex. 12, p. 35.  "The Administrator will comply with any court orders issued from litigation involving the parties to the dispute."  *Id.*  By contrast, "the Arbitrator will make the final, binding decision on the dispute."  *Id.*, p. 36.

Here, the Agreement incorporates AAA rules that authorize the arbitrator alone to rule on, among other things, his or her own jurisdiction and the arbitrability of any claim. Considering that "an arbitrator's authority derives solely from the [parties'] contract," *McDonald*

*v. City of West Branch*, 466 U.S. 284, 290 (1984), the AAA administrator's authority must likewise be constrained, *Ciccio*, 2 F.4th at 586.  The administrator cannot "override the parties' express agreement in favor of general procedural rules."  *Id.* (citation omitted); *see also Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 832 (11th Cir. 1991) ("[A]rbitration rules are incorporated only to the extent that they do not conflict with the express provisions of the arbitration agreement.").

AAA administrators do not have the authority to determine matters of arbitrability and the Court is not bound by an AAA administrator's decision declining to proceed with arbitration. *See Kaspers v. Comcast Corp.*, 631 F. App'x 779, 781 (11th Cir. 2015) (noting the AAA accepted jurisdiction pursuant to a court order after the AAA previously declined to arbitrate a claim because of a deviation from AAA protocol).  In this case, the AAA administrator recognized her limited role by explaining that the parties may raise with the arbitrator the administrative decision to apply the Protocol.  *See* Ex. 9, Jan. 17, 2023 AAA email ("The parties may wish to raise this issue to the arbitrator upon appointment.").

The AAA's Healthcare Policy Statement, which references the Protocol, acknowledges that arbitration may proceed under court order in the circumstance of this case.  *See* **Exhibit 13**, AAA Healthcare Policy Statement ("[The AAA] announced that it would not administer healthcare arbitrations between individual patients and healthcare service providers . . . unless all parties agreed to submit the matter to arbitration after the dispute arose . . . . However, the AAA will administer disputes between patients and healthcare providers to the extent a court order directs such a dispute to arbitration.").  Ms. Lehr also recognized in communications with AAA that, even assuming the Protocol applies, arbitration may proceed by court order in this case.  *See* Exs. 7 & 8, Ms. Lehr's January 4, 2023 letter to AAA and January 9, 2023 email to AAA.

The Protocol, however, does not apply to this dispute.  Ms. Lehr's claims do not involve a dispute over health plan coverage, medical treatment, or access to medical treatment; Cryo-Cell is neither a healthcare provider nor a managed care organization; and Ms. Lehr and other Cryo-Cell clients who she purports to represent are not patients of Cryo-Cell (nor does Ms. Lehr allege they are patients of Cryo-Cell).  *See* Ex. 6.  *See Owens v. Nat'l Health Corp*., 263 S.W.3d 876, 888 (Tenn. 2007) ("[B]y its express terms, the [Healthcare] Due Process Protocol applies only in the context of disputes arising between patients and their private managed-care plans.").  For this additional reason, Ms. Lehr should be compelled to submit her claims to arbitration.

Arbitrability is the exclusive province of the arbitrator in this case, the Court is not bound by the determination of the AAA administrator, and the AAA's Policy Statement relating to the Protocol contemplates a court order compelling arbitration in these circumstances.  Therefore, notwithstanding the AAA's erroneous administrative decision to apply the Protocol and Ms. Lehr's refusal to confirm her agreement to arbitrate, Ms. Lehr should be compelled to submit her claims to arbitration for a determination of the arbitrability of those claims.

**D.  <u>If the Court decides arbitrability, it should compel arbitration of Ms. Lehr's individual claims and dismiss her class claims</u>.**

If the Court finds that threshold issues including arbitrability are the province of the Court, only Ms. Lehr's individual claims should proceed to arbitration, and her class claims must be dismissed.  That is because arbitration is the sole and exclusive remedy for Ms. Lehr under her agreements with Cryo-Cell, *see* Exs. 1 & 2, p. 4, and is available only on an individual basis since her agreements do not authorize class arbitration.  "An implicit agreement to authorize class-action arbitration, however, is not a term that the [court] may infer."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp*., 559 U.S. 662, 685 (2010).  "Class action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply

agreeing to submit their disputes to an arbitrator."  *Id.* at 685.

Arbitration on an individual basis is the only remedy available for Ms. Lehr (and for all other Cryo-Cell clients under their agreements, including the proposed class members); therefore, Ms. Lehr's attempt to assert class claims must fail.  *See, e.g.*, *Opalinski v. Robert Half Int'l Inc.*, 677 F. App'x 738, 742-44 (3d Cir. 2017) ("We cannot infer an intent to arbitrate class claims. . . . [W]e will affirm the District Court's dismissal of this action with prejudice."); *Eshagh v. Terminix Int'l Co. L.P.*, 2012 WL 1669416, at *10 (E.D. Cal. May 11, 2012), *aff'd*, 588 F. App'x 703 (9th Cir. 2014) ("[A] party may not be compelled to submit a dispute to class arbitration where there is no agreement to do so, [and] the Court recommends that the motion to strike class allegations be GRANTED.").

### i.      *Ms. Lehr's individual claims must be arbitrated*.

Where a court decides arbitrability, there are three factors to consider: "'(1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived.'"  *Polvent v. Glob. Fine Arts, Inc.*, 2014 WL 4672442, at *2 (S.D. Fla. Sept. 18, 2014).  If applied to this case, these factors require arbitration of Ms. Lehr's individual claims and dismissal of her class claims.

First, Ms. Lehr admits that she made a valid agreement with Cryo-Cell.  Complaint ¶ 56 ("Plaintiff and each of the Class Members entered into valid contracts with Cryo-Cell.").  Ms. Lehr signed her agreements with Cryo-Cell evidencing her assent to their terms, including the arbitration clause in each contract.  *See* Exs. 1 & 2, p. 6.  Ms. Lehr's Complaint also asserts a breach of contract claim based on her agreement with Cryo-Cell.  Complaint ¶¶ 54-59.

Ms. Lehr has the burden "of proving a contractual defense to enforcement of the arbitration agreement."  *AMS Staff Leasing, Inc. v. Taylor*, 158 So. 3d 682, 687 (Fla. 4th DCA

2015) (citation omitted).  Her Complaint, however, does not include any allegations of duress, unconscionability, or concerns over public policy.[7]  As such, Ms. Lehr does not establish any contractual defense to enforcement of her arbitration agreements with Cryo-Cell.

The second factor—an arbitrable issue—is satisfied because Ms. Lehr's individual claims fall within the scope of the parties' arbitration provision.  The arbitration clause applies to "[a]ll questions, disputes or differences which may arise between the Parties to this Contract" and requires that all such disputes "shall . . . be referred to arbitration" as "the sole and exclusive remedies of the Parties."  *See* Exs. 1 & 2, p. 4.

Courts read such provisions to require arbitration of contract, tort, statutory, or other claims asserted by a party to the agreement, including claims of fraudulent inducement.  *See, e.g., Tracfone Wireless*, 229 F. Supp. 3d at 1294 ("The broad language of the arbitration provision governs '[a]ll controversies, disputes or claims arising between the parties to this Agreement' . . . . [including] fraud in the inducement . . . and unjust enrichment . . . . All three causes of action fall within the broad scope of the arbitration provision."); *Nelson v. City of Live Oak*, 2011 WL 5006472, at *3 (M.D. Fla. Oct. 20, 2011) (finding that a federal statutory claim fell within an arbitration provision stating that "grievance and arbitration provisions of this [agreement] shall be the sole and exclusive remedy"); *Holmes v. Delray Med. Ctr., Inc.*, 2009 WL 10668985, at *3 (S.D. Fla. Dec. 29, 2009) ("[T]he arbitration clause is broad to include arbitration of claims . . . [as] the sole and exclusive remedy.").

"[P]arties to [arbitration] agreements cannot avoid them by casting their claims in tort,

---

[7] Ms. Lehr does not allege external pressure or loss of volition, *see Francavilla v. Francavilla,* 969 So. 2d 522, 524–25 (Fla. 4th DCA 2007) (setting out elements of duress), she does not claim unequal bargaining power or that her agreements "are so outrageously unfair as to shock the judicial conscience," *see FL–Carrollwood Care, LLC v. Gordon*, 72 So. 3d 162, 165 (Fla. 2d DCA 2011) (discussing procedural and substantive unconscionability), nor does she raise issues of public policy.  *See Palm Ct. NH, L.L.C. v. Dowe*, 336 So. 3d 735, 737 (Fla. 4th DCA 2022) ("[N]either waiving access to courts, nor limiting judicial review, alone make an arbitration agreement unenforceable as against public policy.").

rather than contract." *Real Digital Media*, 2009 WL 10670943, at *2 (citing *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 384 (11th Cir. 1996)). "[W]here their underlying operative facts 'have a connection with' the contractual relationship between the parties, tort claims are also covered by a broadform arbitration clause." *Id.*; *see also Harrell's, LLC v. Agrium Advanced (U.S.) Techs., Inc.*, 795 F. Supp. 2d 1321, 1324, 1330 (M.D. Fla. 2011) ("Counts I–V sound in tort . . . . the Court determines that the arbitration and mediation procedures prescribed in Section 15.03 encompass all of the claims of this case.").

In this case, Ms. Lehr's claims are based on a common set of allegations that Cryo-Cell's advertising is misleading because cord blood is not frequently used to treat the range of conditions referenced in Cryo-Cell's advertising. *See, e.g.*, Complaint ¶¶ 2-3. As such, each of her claims asserted on an individual basis falls within the scope of the arbitration clause.

Regarding the third factor, Cryo-Cell has not taken any action inconsistent with, and therefore has not waived, its right to arbitrate Ms. Lehr's individual claims. After Ms. Lehr filed her Demand for Arbitration, Cryo-Cell confirmed its agreement to arbitrate, and asked the AAA to reconsider its administrative decision to apply the Protocol and to proceed with arbitration. *See* Ex. 6, Dec. 23, 2022 Cryo-Cell Letter to AAA.

After service of the Complaint, Cryo-Cell filed its Notice of Removal, this Motion, and has moved to stay the case. Cryo-Cell has not actively participated in the litigation thereby waiving its right to arbitrate. *See, e.g.*, *Hodgson v. Royal Caribbean Cruises, Ltd.*, 706 F. Supp. 2d 1248, 1256 (S.D. Fla. 2009) ("A 'party that substantially invokes the litigation machinery prior to demanding arbitration may waive its right to arbitrate.'") (quoting *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990)); *see also Dockeray v. Carnival Corp.*, 724 F. Supp. 2d 1216, 1221 (S.D. Fla. 2010) (finding no waiver of the right to arbitrate

where a party removed the case to federal court and answered the complaint).

      **ii.**        *Ms. Lehr's class claims must be dismissed.*

Ms. Lehr's class claims are not arbitrable because the arbitration provision does not evidence any intent to submit class claims to arbitration. An "implicit agreement to authorize class-action arbitration, however, is not a term that the [court] may infer." *Stolt-Nielsen*, 559 U.S. at 685. According to the Supreme Court, "the first principle that underscores all of our arbitration decisions is that arbitration is strictly a matter of consent." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) (citation omitted). "Consent is essential under the FAA because arbitrators wield only the authority they are given. That is, they derive their 'powers from the parties' agreement.'" *Id.*

Consent to class arbitration cannot be inferred from an agreement's silence on the matter because "[c]lass arbitration is not only markedly different from the 'traditional individualized arbitration' contemplated by the FAA," but "it sacrifices the principal advantage of arbitration— its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Id.* at 1415-16 (quoting *Concepcion*, 563 U.S. at 348 (2011)). As a result, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielsen*, 559 U.S. at 684; *see also Trimaldi v. Am. Express Co*., 2019 WL 13255690, at *3 (S.D. Fla. June 13, 2019) ("[T]he Court cannot compel classwide arbitration where, as here, the Agreement is silent, or at least ambiguous, as to whether the parties consented to classwide arbitration.").

Ms. Lehr's agreements with Cryo-Cell do not include any express or implied term that would authorize class arbitration. Therefore, Ms. Lehr's alleged class claims are not subject to arbitration. Nor are the class claims properly before the Court because Ms. Lehr is bound by the

arbitration clause to submit any disputes with Cryo-Cell to arbitration on an individual basis as her sole and exclusive remedy.  *See* Exs. 1 & 2, p. 4.  As a result, Ms. Lehr's class claims are properly dismissed.  *See, e.g.*, *Opalinski*, 677 F. App'x at 742-44 ("Plaintiffs argue that the clause '[a]ny dispute or claim . . . shall be submitted to binding arbitration' is intentionally broad and designed to encompass class or collective actions . . . . We cannot infer an intent to arbitrate class claims on this basis . . . . [W]e will affirm the District Court's dismissal of this action with prejudice."); *Trimaldi*, 2019 WL 13255690, at *3; *Marbaker v. Statoil USA Onshore Props., Inc.*, 2018 WL 4354522, at *8 (M.D. Pa. Sept. 12, 2018) ("[T]he arbitration clause . . . could not be read to allow class action arbitration . . . . Count I of the Amended Complaint will be dismissed without prejudice for lack of subject matter jurisdiction."); *Eshagh*, 2012 WL 1669416, at *10 ("Given the Supreme Court's subsequent determination in *Stolt–Nielsen* that a party may not be compelled to submit a dispute to class arbitration where there is no agreement to do so, the Court recommends that the motion to strike class allegations be GRANTED.").

Should the Court rule on the arbitrability of Ms. Lehr's claims, the inescapable conclusion is that Ms. Lehr's individual claims fall within the ambit of the parties' arbitration clause but her class claims do not.  Accordingly, Ms. Lehr is required to arbitrate any disputes with Cryo-Cell on an individual basis.  Therefore, the Court should compel arbitration of Ms. Lehr's individual claims and dismiss her class claims.

**E.   The arbitration should occur in the agreed forum of Pinellas County, Florida**.

Ms. Lehr agreed to arbitrate disputes with Cryo-Cell "in Pinellas County, Florida" and in her Demand for Arbitration specified Pinellas County as the location for the hearing.  *See* Exs. 1 & 2, p. 4, Ex. 3.  The Court is not bound by Ms. Lehr's choice of litigation forum in Palm Beach County and is authorized to compel arbitration outside of its district.  *See, e.g.*, *Biomedical Eng'g*

*Tr. v. Med. Device Bus. Servs., Inc*., 2019 WL 13226027, at *4 (M.D. Fla. July 16, 2019) ("[A] district court may compel arbitration outside its district pursuant to the [FAA]."); *see also Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins*. Co., 524 F.2d 1275, 1277-78 (5th Cir. 1975). ("[W]here the party seeking to avoid arbitration brings a suit . . . in a district other than that in which arbitration is to take place under the contract, the party seeking arbitration may assert its [FAA] right to have the arbitration agreement performed in accordance with the terms of the agreement.").

Ms. Lehr's agreements with Cryo-Cell require arbitration in Pinellas County, notwithstanding Ms. Lehr's filing of her Complaint in Palm Beach County. *See, e.g.*, *Rojas*, 2015 WL 11199693, at *4 ("[Plaintiffs] are seeking to avoid arbitration, and Plaintiffs brought suit in a district [the Southern District of Florida] other than that where the arbitration is to take place . . . .  Accordingly, the Court shall compel arbitration in Orange County, California."); *Real Digital Media*, 2009 WL 10670943, at *2 ("[T]his Court [the Middle District of Florida] finds that it may compel arbitration in San Jose, California, the district specified in the Agreement."). Therefore, Cryo-Cell requests the Court to compel arbitration in Pinellas County, Florida.

### III.  <u>CONCLUSION</u>

For the reasons discussed in this Motion, Cryo-Cell moves for an order compelling Ms. Lehr to submit her claims to arbitration in Pinellas County, Florida, for a determination of the arbitrability of those claims or, if the Court decides arbitrability, for an order compelling arbitration of Ms. Lehr's individual claims and dismissing her class claims.

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that I have conferred with counsel for Plaintiff in a good faith effort to resolve the issues raised in this Motion and have been unable to do so.

SHUMAKER, LOOP & KENDRICK, LLP

*/s/  Ernest J. Marquart*
Ernest J. Marquart, Florida Bar No. 905860
Jeffrey B. Fabian, Florida Bar No. 0085868
101 East Kennedy Blvd., Suite 2800
Tampa, Florida 33602
Telephone:  (813) 229-7600
Facsimile: (813) 229-1660
emarquart@shumaker.com (Primary e-mail)
mdesilles@shumaker.com (Secondary e-mail)
jfabian@shumaker.com (Primary e-mail)
ldyer@shumaker.com (Secondary e-mail)
***Attorneys for Cryo-Cell International, Inc.***

HOGAN LOVELLS US LLP

*/s/  David Massey*
David Massey
Fla. Bar No. 86129
david.massey@hoganlovells.com
600 Brickell Avenue
Suite 2700
Miami, Florida 33131
Telephone: (305) 459-6500
Facsimile: (305) 459-6550
***Attorneys for Cryo-Cell International, Inc.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record including:

Alec H. Schultz
Carly A. Kligler
Hilgers Graben PLLC
1221 Brickell Avenue, Suite 900
Miami, Florida 33131
aschultz@hilgersgraben.com
ckligler@hilgersgraben.com
***Attorneys for Plaintiff***

/s/ *Ernest J. Marquart*
Attorney