UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-CV-80405-AMC

LINDSEY LEHR,
on behalf of herself and those
similarly situated

      Plaintiff,

vs.

CRYO-CELL INTERNATIONAL, INC.,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON MOTION TO COMPEL ARBITRATION AND MOTION TO STAY [ECF Nos. 5, 6]

Defendant moves to compel arbitration. Like many cases involving contractual arbitration clauses, the pending motion presents the question, "Who should decide?" Here, a AAA arbitrator, not an administrator, is the proper decisionmaker. Therefore, it is recommended that the Motion to Compel Arbitration be GRANTED and that these proceedings be STAYED.

     I.  BACKGROUND

Defendant Cryo-Cell International, Inc. ("Cryo-Cell") is an umbilical cord blood bank. Lindsey Lehr contracted for services from Cryo-Cell. She filed a putative class action in Palm Beach Circuit Court alleging five claims: (1) deceptive and unfair trade practices, (2) breach of contract, (3) unjust enrichment, (4) declaratory judgment, and (5) fraudulent inducement. ECF No. 1-2. Cryo-Cell removed the case to federal court.

ECF No. 1. Cryo-Cell now moves to compel arbitration and to stay proceedings. ECF Nos. 5, 6. Judge Cannon referred both of these motions to me for a report and recommendation. ECF No. 20.

I have reviewed the motions, the responses, the replies, and Cryo-Cell's sur-reply. I also conducted oral argument on July 25, 2023. ECF No. 25. I am fully advised and this matter is ripe for decision.

## II. LEGAL PRINCIPLES

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Griggs v. Kenworth of Montgomery, Inc.*, 775 F. App'x 608, 612 (11th Cir. 2019) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91, (2000)); *see Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1314 (S.D. Fla. 2004) (J. Altonaga) ("The party opposing a motion to compel arbitration . . . 'has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration.'").

"The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1292 (S.D. Fla. 2017) (J. Moreno) (citing *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir 2007)).

> Because a factual Rule 12(b)(1) motion challenges the court's power to hear the claim, the court must closely examine the plaintiff's factual allegations and is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." The court is not limited to the four corners of the complaint, and it may consider materials outside of the pleadings to determine whether or not it has jurisdiction. "In short,

2

> no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating itself the merits of jurisdictional claims."

*Vulpis v. Credit Acceptance Corp.*, No. 16-61200-CIV, 2016 WL 10932954, at *2 (S.D. Fla. Sept. 22, 2016) (J. Williams) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

It is well settled that "[f]ederal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of arbitration agreements." *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (citing *Perry v. Thomas*, 482 U.S. 483 (1987)). Under the Federal Arbitration Act ("FAA"), "no party can be compelled to arbitrate unless that party has entered into an agreement to do so." *Employers Ins. of Wausau*, 251 F.3d at 1322.

The FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2001)). "Where the parties have agreed to arbitrate their dispute, the job of the courts – indeed, the obligation – is to enforce the agreement." *Id.* (citing *Stolt v. Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 682 (2010)). "At the same time, courts may not require arbitration beyond the scope of the contractual agreement, because 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Id.* (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

When a contract is ambiguous as to the parties' intent to arbitrate a particular issue, courts "work from a set of default presumptions, laid out by the Supreme Court, which help [ ] determine what the contracting parties intended." *Id.* "'[A]ny doubts concerning the scope of arbitrable issues' – that is, doubts over whether an issue falls within the ambit of what the parties agreed to arbitrate – 'should be resolved in favor of arbitration.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). "This is because parties whose contract 'provides for arbitration of some issues . . . likely gave at least some thought to the scope of arbitration.'" *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)). In such circumstances, courts will send to arbitration any issues that are arguably within the agreement's scope because "if the parties thought about what they wanted to arbitrate, we can safely assume they thought about and articulated what they didn't want to arbitrate. We assume their intent to arbitrate anything not specifically excluded." *Id.*

Arbitrability involves "fundamental questions that will determine whether a claim will be brought before an arbitrator, and include questions about whether particular parties are bound by an arbitration clause and questions about whether a 'clause applies to a particular type of controversy.'" *Id.* (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "Some arbitrability questions are about the 'scope' or 'applicability' of the parties' arbitration agreement—*i.e.*, what set of disputes the arbitration agreement covers, and whether it governs the particular dispute at hand. Other arbitrability questions are about the 'validity' or

4

'enforceability' of an arbitration agreement—*i.e.*, whether the parties have entered into a legally operative arbitration agreement that is enforceable under law." *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1298–99 (11th Cir. 2022) (internal citations omitted).

### III.  FACTS

On March 30, 2018, Ms. Lehr and her husband signed a Client Agreement and Informed Consent for Umbilical Cord Blood and Cord Tissue Services ("2018 Contract") relating to the birth of their child. ECF No. 10-1. The 2018 Contract contained the following term:

> This Contract will be governed by and construed in accordance with the laws of the State of Florida, without giving effect to conflict of laws, rules or principles. This Contract has been prepared in the English language and the English language shall control its interpretation. ***All questions, disputes or differences which may arise between the Parties to this Contract shall, if such questions, disputes or differences cannot be amicably resolved by the Parties, be referred to arbitration to be held in Pinellas County, Florida in accordance with the Commercial Arbitration Rules of the American Arbitration Association, which rules are deemed to be incorporated by reference into this Section.*** The arbitrators' decision shall be final and binding upon the Parties and shall provide the sole and exclusive remedies of the Parties. Judgment upon any award rendered by the arbitrator may be entered in any court having jurisdiction in Pinellas. Application may be made to such court for judicial acceptance of the award or orders of enforcement.

*Id.* at 5 (emphasis added) ("Arbitration Clause"). They signed a similar contract, containing the identical Arbitration Clause, in January 2021, relating to the birth of a different child. ECF No. 10-2 at 5 ("2021 Contract").

On November 11, 2022, Ms. Lehr filed a Commercial Arbitration Rules Demand for Arbitration with the American Arbitration Association ("AAA"). ECF

No. 10-3. On November 23, 2022, AAA's Consumer Filing department sent correspondence to Ms. Lehr's counsel and to Cryo-Cell saying:

> Pursuant to the Healthcare Due Process Protocol, which can be found on the AAA website, specifically Principle 3, the AAA may only proceed forward on arbitration matters arising out of healthcare treatment agreements if the parties agree to binding forms of dispute resolution after a dispute arises.
>
> Therefore, we are requesting that the parties sign and date below and return a copy of this letter to consumerfiling@adr.org indicating your agreement to AAA administration of this dispute under the Consumer Arbitration Rules.
>
> [Signature Block]
>
> Unfortunately, if we do not receive the parties' submission by December 8, 2022, we may administratively close the file.

ECF No. 10-6.

Principle 3 of the Healthcare Due Process Protocol ("the Protocol") says that agreeing to arbitration cannot be a precondition for receiving medical treatment:

> The agreement to use ADR should be knowing and voluntary. Consent to use an ADR process should not be a requirement for receiving emergency care or treatment. In disputes involving patients, binding forms of dispute resolution should be used only where the parties agree to do so after a dispute arises.

ECF No. 10-7 at 17.

On December 23, 2022, Cryo-Cell responded to AAA's email. It wrote to a Case Filing Supervisor and asked for reconsideration. ECF No. 10-8. It argued that (1) the Protocol did not apply because Cryo-Cell and Ms. Lehr did not have a covered provider-patient relationship, (2) the Protocol did not apply because Ms. Lehr's claims did not relate to medical care or treatment, and (3) even if the Protocol applied,

6

Ms. Lehr gave post-dispute consent by filing her November 11 Demand for arbitration. *Id*. Cryo-Cell provided a consent to arbitrate dated December 23, 2022. ECF No. 10-8 at 42.

On January 4, 2023, Ms. Lehr responded to Cryo-Cell's December 23 letter. [referenced in 10-9 at 5 but not in the record]. Ms. Lehr filed this lawsuit in Palm Beach Circuit Court on January 6, 2023. ECF No. 1-2 at 8.

On January 9, the Case Filing Supervisor responded, "Please note we have received the parties correspondence and it is currently under review." ECF No. 10-9 at 4.

On January 17, the Case Filing Supervisor reaffirmed AAA's prior decision:

> This case has been reviewed again and the AAA has determined our initial determination is correct. The parties may wish to raise this issue to the arbitrator upon appointment.
>
> I would like to remind all parties that in order for this matter to move forward both parties are required to sign the Healthcare Due Process as originally requested, attached for your convenience.
>
> Please submit the requested signatures on or before January 31, 2023. If the requested items are not received this matter will be closed.

ECF No. 10-9 at 2. On February 3, 2023, AAA administratively closed the matter because Ms. Lehr had not submitted the required consent. ECF No. 10-10.

## IV.   DISCUSSION

Ms. Lehr argues that she complied with the Arbitration Clause by presenting her claim to AAA, and that the issue of arbitrability has been resolved by a proper adjudicator. She argues that her agreement to the Arbitration Clause did not encompass requiring her to sign the consent.

7

Cryo-Cell argues that the Protocol does not apply, that only an arbitrator — not an administrator — can decide whether the Protocol applies, that Ms. Lehr consented by filing her demand for arbitration, and that AAA has acknowledged the Court's authority to compel arbitration notwithstanding the Protocol. Cryo-Cell asks this Court either (1) to compel AAA to appoint an arbitrator, reserving all issues of arbitrability to that arbitrator or (2) to decide arbitrability, compel arbitration of Ms. Lehr's individual claim, and dismiss her class claims. ECF No. 5 at 20.

The parties agree that the Arbitration Clause removed issues of arbitrability from this Court. *See, e.g.,* ECF No. 5 at 11 ("Ms. Lehr's agreements with Cryo-Cell establish a clear and unmistakable intent to refer gateway questions including arbitrability to the arbitrator."); ECF No. 10 at 4 ("in accord with their contractual obligations, the parties have referred their disputes, including the question of arbitrability, to arbitration under the AAA). The question presented is whether a AAA Administrator can decline to appoint an arbitrator and close a case because a party has not complied with a condition precedent that the Administrator determines is required by AAA's rules. Put differently, was an arbitration "held" if no arbitrator was appointed?

The Sixth Circuit's decision in *Ciccio v. SmileDirectClub, L.L.C.*, 2 F.4th 577 (6th Cir. 2021) is the only appellate decision that squarely addresses the issue presented here. In that case, a customer purchased orthodontic implements from a dental supplier. The purchase agreement contained an arbitration clause under which the parties "agree[d] that the arbitration shall be conducted by a single, neutral

8

arbitrator selected by the parties and shall be resolved using the rules of the American Arbitration Association." *Id.* at 580. When the customer filed a demand for arbitration, an "AAA administrator informed the parties that AAA's Healthcare Due Process Protocol and Healthcare Policy Statement applied, which require healthcare providers and their patients to sign an arbitration agreement after a dispute arises in certain cases unless a court order has compelled arbitration." *Id.*

The dental supplier appealed within AAA, but the Administrator reaffirmed its decision that the arbitration could not proceed without either a court order or the customer's consent. The customer refused to execute the consent.

The customer then moved to join an existing lawsuit in federal court. The dental supplier objected because only an administrator, not an arbitrator, had ruled on whether the dispute was arbitrable. The district court agreed with the customer's argument that the parties "got what they bargained for because the dispute had been 'resolved using the rules of the [AAA].'" *Id.* at 581 (brackets in original). The district court declined to compel arbitration. *Id.* at 582.

On appeal, the Sixth Circuit panel majority held that the administrator had improperly decided whether the claims were arbitrable. The majority first held "whether the Agreement incorporates the Healthcare Policy Statement is a gateway question of arbitrability because it's coextensive with 'whether the parties have agreed to arbitrate' the underlying dispute." *Id.* at 583-84 (citing *Harry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019)).

Having determined that the operative question was one of arbitrability, the Sixth Circuit then decided that only an arbitrator could resolve that issue. It looked to both the arbitration clause in the contract and the AAA Rules. It said:

> The Agreement indicates that "any dispute ... will be determined by submission to arbitration." Under AAA's definition of arbitration, arbitration is when "the parties submit disputes to an impartial person (the arbitrator) for a decision." The Agreement also says that the arbitration "shall be conducted" by a single arbitrator. *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 112 (1st ed. 2012) ("[S]hall is mandatory" (emphasis omitted)). There's no question that this dispute reached only an administrator, not an arbitrator.
>
> Under AAA's rules, an arbitrator and an administrator are distinct. "The [a]dministrator's role is to manage the administrative aspects of the arbitration, such as the appointment of the arbitrator .... the [a]dministrator does not decide the merits of a case or make any rulings on issues such as what documents must be shared with each side." R.89-1 P.1748. Unsurprisingly, the administrator helps disputes get to an arbitrator and doesn't make merits rulings. On the other hand, "[a]rbitrators are neutral and independent decision makers who .... make the final, binding decision on the dispute .... The [a]rbitrator makes all the procedural decisions on a case not made by the administrator." R.89-1 P.1749. The arbitrator decides the merits of a dispute. And if an administrator could preempt a final merits ruling by an arbitrator, the administrator would effectively run afoul of the provision that administrators "cannot overrule or change an arbitrator's decisions or rulings." R.89-1 P.1748. The dispute here, the arbitrability of Johnson's claim, thus should've gone to an arbitrator for a "final, binding decision."

*Id.* at 584-85.

The majority was careful not to address the merits of the arbitrability question, saying "Today's decision is a narrow one. We say nothing about whether the underlying dispute is arbitrable, only that the Agreement requires that an arbitrator make that determination. Both parties are free to make the arguments they made before us to the arbitrator." *Id.* at 588.

10

The dissenting judge agreed with the customer and the trial court that the parties' arbitration agreement included allowing the administrator to resolve whether the Protocol applied. *Id*. at 591-93. So, the parties "receive[d] exactly what they bargained for when signing their contract." *Id*. at 593.

I find the majority opinion in *Ciccio* to be persuasive and I adopt its reasoning. Therefore, I recommend that the Motion to Compel be granted and AAA be ordered to appoint an arbitrator.[1]

Ms. Lehr attempts to distinguish *Ciccio* because the arbitration agreement in *Ciccio* explicity required "a single, neutral arbitrator" whereas the Arbitration Clauses "here do not demand a single arbitrator, but refer to the process of arbitration and explicitly entertain the possibility of multiple decision makers." ECF No. 10 at 12. Although the panel majority relied in part on the contractual requirement that the arbitration "shall be conducted by" a single arbitrator, it independently held that the AAA Rules required an arbitrator to decide — as a gateway issue of arbitrability — whether the Protocol applied. *Ciccio,* 2 F. 4th at 583-586.

---

[1] Ms. Lehr does not dispute that AAA's internal policies recognize a Court's authority to order AAA to administer this arbitration, notwithstanding the Protocol. ECF No. 10 at 14; *see* AAA Healthcare Policy Statement, ECF No. 10-11 at 2 (AAA will administer "disputes between patients and healthcare providers to the extent a court order directs such a dispute to arbitration where the parties' agreement provides for the AAA's rules or AAA administration.").

11

**REPORT AND RECOMMENDATION**

Accordingly, this Court **RECOMMENDS** that the District Court GRANT the Motion to Compel Arbitration and GRANT the Motion to Stay.

**NOTICE OF RIGHT TO OBJECT**

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 18th day of August 2023.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE