**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO**. **23-80405-CIV-CANNON/Reinhart**

**LINDSEY LEHR**
on behalf of herself and those similarly situated,

      Plaintiff,

v.

**CRYO-CELL INTERNATIONAL, INC.,**

      Defendant.

_____/

**ORDER ACCEPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION [ECF No. 29]**

      **THIS CAUSE** comes before the Court upon Defendant's Motion to Compel Arbitration

[ECF No. 5] and Motion to Stay [ECF No. 6] (the "Motions"). The Motions were referred to

Magistrate Judge Bruce E. Reinhart for a report and recommendation [ECF No. 20]. On August

18, 2023, Judge Reinhart issued a report recommending this Court grant the Motions

(the "Report") [ECF No. 29]. Plaintiff filed Objections to the Report [ECF No. 32], to which

Defendant replied [ECF No. 36].[1] The Court has reviewed the Report [ECF No. 29], Plaintiff's

Objections [ECF No. 32], Defendant's Response [ECF No. 36], and the full record.[2] For the

reasons set forth below, the Report [ECF No. 29] is **ACCEPTED**; the Motion to Compel

Arbitration [ECF No. 5] is **GRANTED**; and this matter is **STAYED** pending the outcome of the

parties' arbitration proceedings.

---

[1] Defendant filed a Notice of No Objection [ECF No. 30] to the Report.

[2] Plaintiff's Motion for Leave to File Reply in Support of Objections to Report and
Recommendation [ECF No. 39] is **DENIED**. Federal Rule of Civil Procedure 72(b)(2) does not
authorize the filing of a reply in support of objections, and Plaintiff's motion does not demonstrate
the necessity of a reply in this case.

## RELEVANT BACKGROUND

This putative collective action arises from Plaintiff's contracts with Defendant for storage of her children's umbilical cord blood.  Defendant, Cryo-Cell International, Inc., "collects and stores umbilical cord blood throughout the United States" and "aggressively market[s] its services as potentially life-saving treatment options for children" [ECF No. 1-2 ¶ 2].  In March 2018, prior to the birth of their first child, Plaintiff and her husband signed a contract for Defendant to store their child's umbilical cord blood (the "2018 Contract") [ECF No. 10-1 (2018 Contract)].  In January 2021, prior to the birth of their second child, they signed a second contract for Defendant's umbilical cord blood storage services (the "2021 Contract") [ECF No. 10-2 (2021 Contract)]. Both contracts contained an identical Arbitration Clause, which reads as follows, in relevant part:

> All questions, disputes or differences which may arise between the Parties to this Contract shall, if such questions, disputes or differences cannot be amicably resolved by the Parties, be referred to arbitration to be held in Pinellas County, Florida in accordance with the Commercial Arbitration Rules of the American Arbitration Association, which rules are deemed to be incorporated by reference into this Section.  The arbitrators' decision shall be final and binding upon the Parties and shall provide the sole and exclusive remedies of the Parties.  Judgment upon any award rendered by the arbitrator may be entered in any court having jurisdiction in Pinellas.  Application may be made to such court for judicial acceptance of the award or orders of enforcement.

[ECF No. 10-1 p. 5; *see also* ECF No. 10-2 p. 5].

Plaintiff alleges that Defendant makes false and misleading statements to parents throughout the United States to induce those families to contract with Defendant to bank their children's umbilical cord blood [ECF No. 1-2 ¶ 1].

On November 11, 2022, Plaintiff filed an arbitration demand against Defendant with the American Arbitration Association (AAA) [ECF No. 10-3].  AAA's Consumer Filing Department sent the parties an email requesting that the parties sign an agreement under the Healthcare Due Process Protocol (the "Protocol") to consent to AAA administration of the dispute [ECF No. 10-6

("Pursuant to the Healthcare Due Process Protocol, which can be found on the AAA's website, specifically Principle 3, the AAA may only proceed forward on arbitration matters arising out of healthcare treatment agreements if the parties agree to binding forms of dispute resolution after a dispute arises.  Therefore, we are requesting that the parties sign and date below and return a copy of this letter to consumerfiling@adr.org, indicating your agreement to AAA administration of this dispute under the Consumer Arbitration Rules.")].  Defendant responded via letter on December 23, 2022, asking for reconsideration of the application of the Protocol; arguing that the Protocol was not applicable because the parties did not have a patient-provider relationship; asserting that Plaintiff's claims did not relate to medical care or treatment; and maintaining that, even if the Protocol does apply, Plaintiff had given consent already by filing her demand for arbitration [ECF No. 10-8].  Despite those reservations, Defendant provided its consent to arbitrate with the AAA pursuant to the Protocol [ECF No. 10-8 p. 42 (signed consent)].  On January 17, 2023, AAA's Case Filing Supervisor reaffirmed the AAA's decision to apply the Protocol and "remind[ed] all parties that in order for [the] matter to move forward both parties are required to sign the Healthcare Due Process as originally requested" [ECF No. 10-9 p. 2].  On February 3, 2023, when Plaintiff failed to sign the required consent form, AAA administratively closed the matter [ECF No. 10-10].

While the parties' correspondence was under review with the AAA [ECF No. 10-9], on January 6, 2023, Plaintiff filed a five-count complaint in the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida [ECF No. 1-2 pp. 8–29].  The Complaint asserts the following claims against Defendant:

- Count I – Florida Deceptive and Unfair Trade Practices Act [ECF No. 1-2 ¶¶ 44–53].

- Count II – Breach of Contract [ECF No. 1-2 ¶¶ 54–59].

- Count III – Unjust Enrichment [ECF No. 1-2 ¶¶ 60–64].

- Count IV – Declaratory Judgment [ECF No. 1-2 ¶¶ 65–82]

- Count V – Fraudulent Inducement [ECF No. 1-2 ¶¶ 83–88].

On March 14, 2023, Defendant removed this matter to federal court [ECF No. 1]. Following removal, Defendant filed the instant Motions seeking to compel arbitration of Plaintiff's claims and to stay the matter pending the outcome of arbitration proceedings [ECF Nos. 5, 6]. In opposition, Plaintiff argues that she "satisfied her obligations to arbitrate" by filing her arbitration demand, but because an AAA administrator, acting on behalf of the AAA [ECF No. 32 p. 10 n.3], "determined that [Plaintiff's] claims are not arbitrable without a separate post-dispute agreement" in accordance with the Protocol, she may now proceed to litigate her claims [ECF No. 11 pp. 2–3]. On August 18, 2023, Judge Reinhart issued the Report [ECF No. 29]. Plaintiff timely filed Objections [ECF No. 32]. Defendant responded to those Objections [ECF No. 36]. The Report is ripe for adjudication [ECF Nos. 32, 36].

## LEGAL STANDARDS

To challenge the findings and recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the proposed findings and recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). A district court reviews de novo those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1). To the extent a party fails to object to parts of the magistrate judge's report, the Court may accept the recommendation so long as there is no clear error on the face of the record. *Macort*, 208 F. App'x at 784. Legal conclusions are reviewed de novo, even in the absence

of an objection. *See LeCroy v. McNeil*, 397 F. App'x 554, 556 (11th Cir. 2010); *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

## DISCUSSION

The Report recommends an order compelling Plaintiff to arbitrate her claims pursuant to the Arbitration Clause and staying this matter pending arbitration proceedings [ECF No. 29 p. 12]. At the outset, the Report notes that the parties "agree that the Arbitration Clause removed issues of arbitrability from this Court" [ECF No. 29 p. 8]. Therefore, the Report focuses on the parties' narrow dispute: "whether a AAA administrator can decline to appoint an arbitrator and close a case because a party has not complied with a condition precedent that the Administrator determines is required by AAA's rules" [ECF No. 29 p. 8]. On that question, the Report answers no [ECF No. 29 p. 11]. Specifically, the Report concludes that the language of the Arbitration Clause in the parties' contracts requires that an arbitrator decide whether the Protocol applies [ECF No. 29 p. 11]. Relying on *Ciccio v. SmileDirectClub, L.L.C.*, 2 F.4th 577 (6th Cir. 2021), "the only appellate decision that squarely addresses the issues presented here," the Report concludes—based on the Arbitration Clause in the parties' contract and the AAA Rules—that the AAA administrator's decision on whether the Protocol applies is one of arbitrability, and therefore, only an arbitrator can resolve that issue [ECF No. 29 pp. 9–10].

In objecting to the Report, Plaintiff maintains her position that the AAA's administrator's decision to close the case following Plaintiff's refusal to sign the Protocol indicates that the AAA already administered the dispute, leaving nothing more to be done as a matter of arbitration, and freeing her up to litigate in federal court notwithstanding the Arbitration Clause [ECF No. 32 pp. 9–10; *see also* ECF No. 10 pp. 4–6]. Plaintiff further objects to the Report's reliance on the out-of-circuit decision by the Sixth Circuit in *Ciccio* [ECF No. 32 p. 2]. Specifically, Plaintiff

argues that the Report "misstates *Ciccio*'s reasoning" and "fails to appreciate that the specific contractual language at issue here compels a distinct analysis from *Ciccio*" [ECF No. 32 p. 2].  In Plaintiff's view, the Report does not sufficiently engage with the text of the Arbitration Clause here in the same way the Sixth Circuit in *Ciccio* "rooted its 'narrow' decision in the particular contractual agreement before it" [ECF No. 32 p. 7].  Had it done so, Plaintiff argues, the Report would have found a material distinction between the Arbitration Clause in this case—which incorporates the AAA rules "wholesale and without exception," thus purportedly requiring deference to the AAA's administration of the dispute without the appointment of an arbitrator—versus the arbitration clause in *Ciccio*, which also dictated use of the AAA rules without restriction but contained a more specific reference to the arbitration being "conducted by a single, neutral arbitrator" [ECF No. 32 pp. 7–8].[3]  Plaintiff also argues, for the first time in her Objections, that if the Court adopts the Report, "it should dismiss the case to allow for an immediate appeal of these novel legal issues" [ECF No. 32 p. 13].

Upon a review of the language of the Arbitration Clause to which the parties agreed [ECF No. 10-1 p. 5; ECF No. 10-2 p. 5]—and guided by the relevant case law from the Eleventh Circuit and the Sixth Circuit's factually similar and persuasive decision in *Ciccio*—the Court agrees with the Report's conclusion that the Arbitration Clause requires an arbitrator, not an AAA administrator, to decide gateway questions of arbitrability such as application of the Protocol. Insofar as Plaintiff criticizes the Report for not sufficiently evaluating the terms of the particular

---

[3] *Compare Cicco*, 2 F.4th at 580 ("[T]he arbitration shall be conducted by a single, neutral arbitrator selected by the parties and shall be resolved using the rules of the [AAA]."), *with* [ECF No. 10-1 p. 5 ("All questions, disputes or differences which may arise between the Parties to this Contract shall . . . be referred to arbitration . . . in accordance with the Commercial Arbitration Rules of the [AAA], which rules are deemed incorporated by reference into this section.")].

Arbitration Clause here as compared to the contract at issue in *Ciccio*, the Court concurs with the Report that the parties' agreement does not meaningfully depart from the arbitration clause in *Cicco* such as would counsel a different result. The text of the Arbitration Clause, similar to the clause in *Ciccio*, states, in relevant part, that "[a]ll questions, disputes, or differences which may arise between the Parties to this Contract shall . . . be referred to arbitration" [ECF No. 10-1 p. 5; ECF No. 10-2 p. 5]. *See Ciccio*, 2 F.4th at 580 ("[A]ny dispute regarding the products and services offered [b]y SmileDirectClub . . . will be determined by submission to arbitration."). Both contracts also incorporate the rules of the AAA [ECF No. 10-1 p. 5 (incorporating the Commercial Arbitration Rules of the AAA); ECF No. 10-2 p. 5 (same)]. *See Ciccio*, 2 F.4th at 580 (requiring arbitration to be "resolved using the rules of the [AAA]"). As the *Ciccio* decision notes, this incorporation of the AAA Rules provides "clear and unmistakable evidence that the parties intended to delegate gateway questions to the arbitrator." *Id.* at 583 (internal quotation marks omitted). Though Plaintiff points to the additional language in the *Ciccio* arbitration clause requiring arbitration to be conducted by a "single, neutral arbitrator," that reference only further confirms the parties' intent to "send gateway questions of arbitrability exclusively to an arbitrator," *id.* at 584, and it does not alter the fundamental premise of the *Ciccio* arbitration clause in any event, which as noted, explicitly incorporates the AAA rules. The same result follows here. The parties incorporated the AAA Commercial Rules into the Arbitration Clause, and application of those Rules dictates that a gateway question like application of the Protocol is properly decided by an arbitrator [ECF No. 29 p. 11].[4] The slight variances in language between the arbitration clause

---

[4] AAA Commercial Arbitration R-7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court."); R-7(b) ("The arbitrator shall have the power to determine the

in *Ciccio* as compared to the instant Arbitration Clause does not change the central holding or persuasive reasoning in *Ciccio* as adopted by the Report.  As such, the AAA Administrator's decision to close the parties' file [ECF No. 10-9] does not fulfill the arbitration requirement in the parties' contracts.

While Plaintiff also takes issue with the Report for allegedly subverting the AAA's interpretation of its own Rules [ECF No. 32 pp. 9–10], the Report reaches only the narrow conclusion that an arbitrator must decide the question of arbitrability, that is, whether the arbitration agreement covers the parties' dispute about application of the Protocol [ECF No. 29 p. 11].  No more, no less.  Plaintiff's exaggerated objections do not change that fact.  Because the parties did not get what they bargained for in the Arbitration Clause of the contracts when an AAA administrator decided gateway questions of arbitrability, *see Ciccio*, 2 F.4th at 587, Defendant's Motion to Compel Arbitration is due to be granted, and Plaintiff's claims must be submitted to arbitration under the terms of the parties' contracts [ECF No. 10-1 p. 5; ECF No. 10-2 p. 5].  The AAA shall appoint an arbitrator to administer the parties' dispute.

The Court also agrees with the Report and Defendant that this matter should be stayed pending the outcome of arbitration [ECF No. 29 p. 12; ECF No. 36 pp. 18–20] rather than dismissed as Plaintiff requests for the first time in her Objections to the Report [ECF No. 32 p. 13].  Plaintiff seeks dismissal "to allow for an immediate appeal of these novel legal questions" [ECF No. 32 p. 13].  While Plaintiff is correct that "there is no Eleventh Circuit precedent that directly addresses the issue presented here" [ECF No. 32 p. 13], the Eleventh Circuit has

---

existence or validity of a contract of which an arbitration clause forms a part. . . ."); *see also* Important Notice ("These rules and any amendment of them shall apply in the form in effect at the time the administrative filing requirements are met for a demand for arbitration or submission agreement received by the AAA.").  *Available at* https://www.adr.org/sites/default/files/Commercial-Rules_Web.pdf.

consistently held in different contexts that incorporation of the AAA Rules shows "clear and unmistakable evidence" that the parties intended for an *arbitrator* to decide questions of arbitrability. *See Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230, 1233 (11th Cir. 2018) (holding that incorporation of the AAA Rules evidenced an intent for an *arbitrator* to decide whether an agreement provided for class arbitration); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) ("When the parties incorporated into the 2007 contract the rules of the [AAA], they clearly and unmistakably contracted to submit questions of arbitrability to an *arbitrator*." (emphasis added)); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) ("By incorporating the AAA Rules, including Rule 8, into their agreement, the parties clearly and unmistakably agreed that the *arbitrator* should decide whether the arbitration clause is valid." (emphasis added)).  The only distinct question here is whether application of the Protocol is a question of arbitrability, a point Plaintiff does not meaningfully dispute [*see* ECF No. 32 pp. 1–2].  And on that issue, the Eleventh Circuit has held that "[a]rbitrability issues involve fundamental questions that will determine whether a claim will be brought before an arbitrator."  *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1298 (11th Cir. 2022) (internal quotation marks omitted).

For these reasons, the Report correctly concludes that the application of the Protocol is an arbitrability question that must be decided by an arbitrator consistent with the terms of the Arbitration Clause.  A stay is warranted to permit the parties to get what they bargained for in signing the contracts with the Arbitration Clause: "a[n] arbitrator to interpret the [Arbitration Clause] and for the courts to have a very limited role."  *See Ciccio*, 2 F.4th at 587.

CASE NO. 23-80405-CIV-CANNON/Reinhart

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Report and Recommendation [ECF No. 29] is **ACCEPTED**.

2. Defendant's Motion to Compel Arbitration [ECF No. 5] is **GRANTED.**

3. Defendant's Motion to Stay [ECF No. 6] is **GRANTED**.

4. Plaintiff's Motion or Leave to File Reply in Support of Her Objections to Report and Recommendation [ECF No. 39] is **DENIED**.

5. This case is **STAYED** without prejudice pending arbitration.

6. Every **ninety (90) days** following the date of this Order, the parties are directed to **jointly** file a status report apprising the Court of the status of the dispute resolution process.

7. The Clerk of Court shall **CLOSE** this case for administrative purposes only. Any scheduled hearings are **CANCELED**, any pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 10th day of October 2023.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record